UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOPHIA CROOK,<br><br>      Plaintiff,<br><br>   v.<br><br>COMMISSIONER<br>OF SOCIAL<br>SECURITY,<br><br>      Defendant. | Civil Action No. 18-cv-16223<br><br>OPINION |

**McNULTY, District Judge**

This matter comes before the Court on the appeal by Plaintiff Sophia Crook ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). The matter was reassigned from Judge Salas to me. Having considered the submissions of the parties without oral argument, I will **AFFIRM** the Commissioner's decision.

**I. BACKGROUND**[1]

**Procedural History**

This appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning June 24, 2012. The Social Security

---

[1] Citations to the record are abbreviated as follows:

"DE _" = Docket entry in this case

"R. _" = Administrative Record (DE 6) (the cited page numbers correspond to the number found in the bottom right corner of the page for all DE 7 attachments)

"Pl.'s Br." = Ms. Crook's Brief (DE 12)

"Def's Br." = Commissioner's Brief (DE 13)

1

Administration denied the application initially (R. 122-131) and again on reconsideration (R. 180-192). A hearing was held before Administrative Law Judge ("ALJ") Kimberly L. Schiro on April 29, 2015. (R. 26-62) She denied a finding of disability (R. 20-41). Plaintiff thereafter sought review from the Appeals Council which found no grounds for review on January 31, 2017. (R. 1-5.) Plaintiff then filed suit in this Court under Case No. 17-cv-211. On September 5, 2017, the Honorable Susan D. Wigenton granted Defendant's Motion to Remand. (R. 620.) On December 21, 2017, the Appeals Council vacated the Commissioner's final decision and resubmitted the to an ALJ for a further hearing. (R. 625.) On May 4, 2018, the hearing was held before ALJ Leonard F. Costa, who issued a partially favorable decision on July 31, 2018. (R. 523-46.) Plaintiff filed this appeal from the unfavorable component of that decision.

## II.     STANDARDS AND ALJ's DECISION

### A.     The Five-Step Process and this Court's Standard of Review

The Social Security Administration uses a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. § 416.924(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. In doing so, the Commissioner must consider the combined effect of all medically determinable impairments, even those that are not severe. 20 C.F.R. § 416.923, 416.924a(b)(4), 416.926a(a) and (c). If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the

fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007) (citations omitted).

For the purpose of this appeal, the Court's review of legal issues is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (citing 42 U.S.C. § 405(g)).

**B.     The ALJ's Decision**

The ALJ applied the five-step framework.

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since March 30, 2013. (R. 528.)

At step two, the ALJ found that plaintiff has the following severe impairments: low back disorders, hypertension, history of anemia, knee pain/arthritis disorder, depressive disorder, adjustment disorder and borderline intellectual disorder. (R. 528–29.)

At step three, the ALJ concluded that plaintiff does not have an impairment or combination of impairments which meet any impairment set forth in a Listing.

(R. 529–32.)

At step four, the ALJ found that since June 24, 2012, Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. Her RFC precluded climbing ladders or scaffolds; and limited her from standing and walking more than two hours in an eight-hour workday; but permitted occasional operation of push/pull controls.

At step five, the ALJ made two findings: (1) Plaintiff was not disabled prior to April 6, 2017, according to the Medical-Vocational Guidelines; but (2) became disabled on April 6, 2017 and remained disabled through the date of the ALJ's decision. Plaintiff's disability status changed as of that date because she graduated to the category of a person approaching advanced age—i.e., from ages 50 to 54—pursuant to 20 CFR 404.1563 and 416.963. Before April 6, 2017, the ALJ found, based on the testimony of a vocational expert, that there were jobs existing in in significant numbers in the national economy which Plaintiff could perform. After that date, however, this was no longer true; for a person approaching advanced age, jobs in significant numbers did not exist in the national economy that she could perform. Hence, the ALJ concluded that beginning on April 6, 2017, Plaintiff was disabled within the meaning of the Act.

### III. DISCUSSION

On appeal, Plaintiff argues that the Commissioner's decision should be reversed to the extent she was found not to be disabled before April 6, 2017. She contends that the ALJ erred at steps three, four, and five. Essentially, Plaintiff contends (1) that the ALJ failed to consider whether a combination of Plaintiff's impairments is medically equivalent to several Listings; and (2) that the ALJ's conclusions are not based on substantial evidence.

#### A. Step Three – Whether Plaintiff Qualifies for a Listing

At step three, Plaintiff argues, the ALJ failed to recognize that her combined physical and mental conditions were equivalent to the Listings. (Pl.'s Br. at 16.)

In particular, she points to Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar, and related disorders), 12.05B (intellectual disorder), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.*)

According to plaintiff, the ALJ failed to take into account "crucial" evidence that would have established that she had "'marked limitations' in managing information, interacting with others and (concentration, persistence and pace)," and thus would meet the requirements for the psychiatric listings above. (*Id.* at 17, 26.) Specifically, plaintiff takes issue with the ALJ's treatment of the 2012 report of a psychologist, Dr. Yalkowsky. The ALJ cited that report in support of his conclusion that the plaintiff did "not manifest a significant deficit in adaptive functioning." (*Id.* at 17-18 (citing R. 531-532).) Plaintiff claims this analysis omitted important facts, however: particularly, that Plaintiff "had been homeless, that welfare pays her rent, that she has no friends, that she unable to shop independently," that she had limitations with short term memory and arithmetic, and that she is illiterate. (Pl.'s Br. at 18).

I conclude plaintiff does not meet any of the Listings.

Listing 12.02 (neurocognitive disorders) requires:

> . . . a <u>clinically significant decline</u> in cognitive functioning. Symptoms and signs may include, but are not limited to, disturbances in memory, executive functioning (that is, higher-level cognitive processes; for example, regulating attention, planning, inhibiting responses, decision-making), visual-spatial functioning, language and speech, perception, insight, judgment, and insensitivity to social standards.

Subsection 12.02(B)(1)(a) (Emphasis added). Importantly, this listing requires "[m]edical documentation of a significant cognitive decline <u>from a prior level of functioning</u> in one or more of several listed cognitive areas." (Emphasis added). Plaintiff has failed to cite evidence that her cognitive functioning declined from a prior level over the several years of evaluations. Her argument that she "has exhibited a decline in virtually all of these . . . criteria functions (except for

5

language)" is conclusory; no evidence or facts are cited. (Pl.'s Br. at 22). The burden at step three rests with plaintiff, and that burden is not met here. Plaintiff has thus failed to demonstrate harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

Next, plaintiff challenges the ALJ's ruling that he had considered plaintiff's mental afflictions "singly and in combination" but that she did "not meet or medically equal the criteria of listings 12.04, 12.05 or 12.06." (R. 530.) Here, plaintiff relies heavily on a report from a single psychologist, Dr. Linehan, who opined that plaintiff is "of probable borderline intellectual potential . . . functioning most likely within the mild range of mental retardation to the borderline range on a brief test of cognitive abilities." (Pl.'s Br. at 23.) Yet Dr. Linehan cautions that this observation "would need to be corroborated by formal testing." (*Id.*) Such a qualified conclusion is insufficient to support plaintiff's assertion that Dr. Linehan's observations "confirm [her] disability under the listings." (*Id.* at 26.)

As for Listing 12.04 (depressive, bipolar, and related disorders), the Commissioner cites evidence that plaintiff did not report taking medication for her mental complaints (R. 820, 822, 824), and regularly attended talk therapy. (R. 475-518, 816-24.) The Commissioner also notes that a psychiatrist, Dr. Efobi, reviewed the reports of Dr. Yalkowsky and Dr. Linehan, and found that plaintiff specifically did not meet Listing 12.04. Rather, Dr. Efobi concluded, plaintiff suffered from depression which would entail mild limitations to interacting in the work setting. (Def. Br. at 13, 16); (R. 467.) This was substantial evidence on which the ALJ could legitimately rely.

Plaintiff's 12.05 argument is flawed on its face. First, plaintiff failed to argue that her supposed intellectual disorder began prior to her attaining the age of 22. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B(3); (Def. Br. at 14.) Second, although she points to a reported full scale IQ score of 68, which meets one of the requirements of 12.05B, she has not brought forth any evidence that

6

she meets the others: *i.e.*, that she suffers from an "extreme limitation of one, or marked limitation of two" of four listed areas of mental functioning, a requirement of Listing 12.05. 20 C.F.R. pt. 404, subpt. P,app. 1, § 12.05B(1)(a), (2).

As for plaintiff's other factual contentions, substantial evidence supports the ALJ's contrary conclusions. For instance, plaintiff claims that she was entirely friendless, but the record contains a "third party function report" from her friend, Teresa Spence, in March 2017. Spence reported that plaintiff is capable of interacting with others, is "good "at handling stress, and can adapt to changes in her routine. (R. 536.) The ALJ accorded this report "some weight, as Ms. Spence is a friend who does observe" plaintiff. (*Id.*) Plaintiff's claim of illiteracy is also contradicted by the evidence in the record. (R. 280); (Pl.'s Br. at 37.) Plaintiff herself stated in 2017 that she "reads the Bible" (R. 533, 702-03, 818), has past relevant work as a salesclerk (R. 582), and attended school through eighth grade (R. 531.) No treating or examining physician confirms her claim that she cannot read. (Def. Br. at 15.)

I thus find that substantial evidence supported the ALJ's step 3 findings.

**B. Step Four – Whether the ALJ's Assessment of Plaintiff's RFC Was Based on Substantial Evidence**

At step four, plaintiff contests the ALJ's assessment of her RFC, arguing that it is not based on substantial evidence. (Pl.'s Br. at 26-27.) The RFC, as found by the ALJ, is as follows:

> Only occasional climbing of ramps/stairs, stooping, kneeling, crouching, balancing, or crawling; never climbing ladders/ropes/scaffolds; only occasional pushing or pulling of controls with the lower extremities; occasional interaction with the general public, coworkers, and supervisors; having the ability to understand, remember, and carry out simple instructions; only occasional changes to essential job functions; and having the ability to make simple work-related decisions.

7

(R. 583-84.) The vocational expert acknowledged that those limitations precluded plaintiff from performing her past relevant work. (R. 585.) Still, plaintiff could perform representative alternative work as a document preparer, touchup screener, and final assembler. (*Id.*)

Plaintiff claims that the ALJ simply dismissed her hypertension, fatigue, obesity, and shortness of breath. She notes Dr. Robert Clarke's conclusion that she had problems walking and lifting due to shortness of breath, and that her hypertension and other ailments excluded her from work requirements. (R. 535–36.) The ALJ, however, discounted those conclusions because Dr. Clarke did not provide a narrative explanation for his opinion or describe specific work-related limitations helpful for assessing plaintiff's functional capacity. Those are acceptable reasons for discounting a physician's decision, even if another ALJ might have, in another case, come to a different conclusion. (R. 535–36.)

Similarly, the ALJ plainly considered plaintiff's "musculoskeletal impairments in conjunction with hypertension and obesity." He evaluated the evidence bearing on plaintiff's ability to walk or stand, including Dr. Clarke's conclusions that plaintiff could not walk or lift due to shortness of breath and his evaluation that plaintiff could not sit or stand due to ankle surgery in February of 2015. (R. 535–36.) The ALJ also considered Dr. Ahmed's report, which concluded that these evaluations predated plaintiff's ankle surgery, which podiatric records indicated had contributed to a significant improvement in her walking ability. (R. 536.) The ALJ thus did not disregard the relevant evidence or ignore musculoskeletal impairments; he had substantial evidence on which to base his decision that plaintiff could not perform work requiring "standing and walking more than two hour in an eight-hour workday . . . carrying more than [ten] pounds, [or otherwise in]consistent with a sedentary exertional level." (R. 534.)

### C. Step Five – Plaintiff's RFC Limitations

Finally, plaintiff makes the following arguments contesting the ALJ's step five conclusion: (1) the ALJ did not include all of plaintiff's specific RFC

8

limitations in the hypothetical; and (2) the ALJ applied Medical-Vocational Guidelines, or "Grids," "mechanically without explanation" and also failed to account for plaintiff's supposed illiteracy. *Id.*

The Third Circuit in *Rutherford v. Barnhart*, promulgated the following standard for hypothetical questions to vocational experts:

> [T]he directive in *Podedworny* is that the hypotheticals posed must "accurately portray" the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments "as contained in the record." [...] Fairly understood, such references to all impairments encompass only those that are medically established. And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations.

399 F.3d 546, 553 (3rd Cir. 2005) (citations omitted).

"[C]redibly established limitations" are those that are in the RFC determination and supported by substantial evidence. The record shows that the hypothetical fully incorporated the ALJ's RFC conclusions. (R. 584.) I have already found that the RFC was supported by substantial evidence. Thus, the ALJ committed no error in using it as the basis for a hypothetical question to the vocational expert.

Plaintiff's step five contention also rests on the notion that the ALJ should have considered her alleged illiteracy under Grid 201.17, which may justify a finding of disability for "younger individuals age 45-49" who are "illiterate or unable to communicate in English" and limited to sedentary work. As addressed earlier, plaintiff relies on a single statement she made to Dr. Yalkowsky that she is illiterate, but there is ample evidence to the contrary. (R. 280.) As previously noted, for instance, plaintiff completed forms and applications for benefits (R. 219-26, 699-706, 709-16), stated she reads the Bible (R. 533, 702-03, 818), "and performed semi-skilled work for fourteen years." (R. 465.) Substantial evidence thus supports the ALJ's rejection of plaintiff's claim of illiteracy; this was not a credibly established limitation.

Finally, plaintiff challenges the award of benefits starting on her 50th birthday, arguing that the ALJ "had the discretion to award benefits up to [six] months earlier" but provided no explanation for not doing so. (Pl.'s Br. at 36-37.) The Commissioner's regulations state that "[w]e will not apply the age categories mechanically in a borderline situation. <u>If you are within a few days to a few months of reaching an older age category</u>, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added).

The regulations define a borderline age issue as follows:

1. The claimant reached or will reach the next higher age category within a few days to a few months after the . . . date of adjudication" . . . ; and
2. Using the claimant's chronological age results in a not disabled determination; and [u]sing the next higher age category to adjudicate the borderline period results in a disabled determination.

The ALJ found that plaintiff became disabled on April 6, 2017—the date plaintiff's age category changed to that of a person approaching advanced age. (R. 537.) She did not attain the age of 50 "after the . . . date of adjudication"; the ALJ issued his decision on July 31, 2018. This did not meet the definition of a "borderline age" situation in which mechanical application of the age category resulted, or would have resulted, in an unfair denial. *Id.*

## CONCLUSION

The ALJ's decision was legally correct and supported by substantial evidence. It is affirmed.

Dated: February 16, 2021

/s/   Kevin McNulty
KEVIN MCNULTY, U.S.D.J.